IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | |
|---|---|
| LEETOSHA HENRY, *et. al* | ) |
| Plaintiffs, | ) ) ) |
| v. | ) Civil Case No. 1:14-cv-00396 ) |
| H.B.L., LLC, *et. als* | ) ) |
| Defendants. | ) ) ) |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS 1

COME NOW, the Plaintiffs, Leetosha Henry and Zachary Henry, by Counsel, and in support of their opposition to Defendant HBL's Motion to Dismiss state as follows:

### I. STATEMENT OF FACTS

On July 20, 2013, the Plaintiffs, Leetosha Henry and Zachary Henry, husband and wife, to wit (hereinafter the "Henrys" or the "Plaintiffs") visited the Defendant HBL, LLC d/b/a Audi of Tyson's Corner's (hereinafter "HBL") automobile dealership in Fairfax, Virginia. A sales representative of Defendant HBL d/b/a Audi of Tyson's Corner (hereinafter "HBL") showed the Plaintiffs a used 2008 BMW Mini Cooper with fewer than 49,000 miles on its odometer (hereinafter "the vehicle") and offered it for sale. Soon after the purchase, approximately 800 miles after the vehicle was driven off of HBL's sales lot, the vehicle's engine suffered a catastrophic failure when its timing chain broke. That failure was caused in part by the vehicle having "very little oil in it" with "roughly only 1.5 quarts" of oil in the engine. *See,* **Exhibit E** to

---

1 - The Plaintiffs - - without waiving their objection to the June 3, 2014, Order of the Magistrate Judge - - hereby timely file their memorandum in opposition to Defendant's Motion to Dismiss pursuant to E.D.Va.Loc.Civ.R.7(F)(1).

1

Complaint (January 3, 2014, Letter to Penske General Counsel with attachments). 2

In the 250-day period since the breakdown, the Plaintiffs have made, and will continue to make, monthly payments in an amount exceeding $350 per month, continue to maintain insurance on the vehicle, continue to incur storage costs and other damages, and are forced to decline part-time employment opportunities while incurring substantial attorney's fees to prosecute their lawsuit against Defendant HBL.  Now Defendant HBL in support of its motion to dismiss seeks to impart into the proceedings a document (the "Buyer's Guide") that fails, on its face, to follow the Federal Trade Commissions' Used Motor Vehicle Trade Regulation Rule (hereinafter the "used car rule") found at 16 C.F.R. § 455, *et seq*.  The Buyer's Guide was not a part of the contract as Defendant contends, in error, because the FTC's Used Motor Vehicle Trade Regulation Rule required HBL to do the following:

> (f) if a dealer includes an optional signature line on the Buyer's Guide, the dealer "**must include a disclosure in immediate proximity to the signature line stating: '*I hereby acknowledge receipt of the Buyer's Guide at the closing of this sale.*'**"

16 C.F.R. 455.2 (f).  (Emphasis added).  No such disclosure as required under 16 C.F.R. 455.2(f) appears **anywhere** on the face of the Buyer's Guide.  Nevertheless, should the Court still find it prudent and appropriate to entertain the improperly introduced Buyer's Guide, the Buyer's Guide fails to comply with federal law, under the Magnuson-Moss Warranty Act - Federal Trade Commission Improvement Act, 15 U.S.C. § 2301-2312 (1982) (hereinafter "Magnusson-Moss" or "MMWA") as discussed more fully at Section III.A.2., *infra*.

Separately, the Buyer's Order (*not the Buyer's Guide*) that is the contract for the purchase of the vehicle contained the "AS IS" disclaimer provision that is required under Virginia Code Section 46.2-1529.1.  However, this disclaimer provision was not signed and was not entirely in

---

2 For purposes of convenience Exhibit E is attached hereto.

2

bold print as required by Va. Code Section 46.2-1529.1.

As to the fact that HBL served as the warrantor, when the Plaintiffs attempted to contact the purported "warranty company" they were always referred back to HBL. HBL advised the Plaintiffs that they would deal with the warranty company on Plaintiffs behalf. As a result, the Plaintiffs became victims of a finger-pointing scheme wherein HBL asserted it had no responsibility under the warranty and the "warranty company" refused to allow Plaintiffs to contact the "warranty company." HBL became, at the very least, an agent of the "warranty company."

In sum and as more particularly described herein, HBL implied that the vehicle was fit for the purpose it was sold to the Plaintiffs and failed to disclaim, indeed cannot disclaim, its liability for breach of an implied warranty because Virginia law specifies exacting standards that dealerships must follow in order to disclaim implied warranties. Those standards were not followed in the instant matter. Defendant HBL violated the Virginia Consumer Protection Act in several ways when dealing with the Henrys, all as plead in their well-pleaded complaint filed in the Circuit Court for the County of Fairfax, Virginia, on March 5, 2014.

## II. MOTION TO DISMISS STANDARD OF REVIEW

Rule 8(d), Fed.R.Civ.P., requires only that the allegations within the pleadings merely be "simple, concise, and direct. No technical form is required." In the event a pleading is deficient, courts should generally grant the non-moving party an opportunity to cure the deficiencies in the complaint." *See*, <u>Dockside Association v. Detyens, Simmons, et. al.</u>, 297 S.C. 91, 95, 374 S.E.2d 907, 909 (Ct. App. 1988). Federal Rule of Civil Procedure 15(a) provides that "[a] party may amend its pleading once as a matter of course . . . before being served with a responsive pleading."

3

"A motion to dismiss is not a 'responsive pleading' within the contemplation of Rule 15(a). Fed.R.Civ.P. 7(a); Vanguard Military Equipment Corp. v. David B. Finestone Co, 6 F.Supp.2d 488, 492 (E.D.Va 1997) (motion is not a responsive pleading); Wallace v. Chrysler Credit Corp., 743 F.Supp.1228, 1236 (W.D.Va.1990)(motion to dismiss is not responsive pleading for purposes of Rule 15)." Johnson v. Portfolio Recovery Associates, LLC, 682 F.Supp 2d 560 (E.D.Va.2009). An analysis of a 12(b)(6) Motion is context specific and requires the "reviewing court to draw on its judicial experience and common sense." Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir.2009). "[N]aked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility of entitlement to relief." Id. In short, the Court must assume Plaintiffs' well-pleaded factual allegations to be true, and determine whether those allegations "plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1950 (2009),

United States District Judge Anthony Trenga addressed ruling on Rule 12(b)(6) Motions to Dismiss after Iqbal and Twombly in McCune v. National City Bank, 701 F. Supp. 2d 797 (E.D. Va. Mar. 24, 2010) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)):

> A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the Complaint and does not resolve contests surrounding the facts or merits of a claim. *See*: Randall v. United States, 30 F.3d 518, 522 (4th Cir.1994); Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1994). A claim should be dismissed "if, after accepting all well-pleaded allegations in the plaintiff's complaint as true ... it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." Hatfill v. The New York Times Co., No. 04–cv–807, 2004 WL 3023003, at *4 (E.D.Va. Nov. 24, 2004) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir.1999)); see also Trulock v. Freeh, 275 F.3d 391, 405 (4th Cir.2001). In considering a motion to dismiss, "the material allegations of the complaint are taken as admitted." Jenkins v. McKeithen, 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969) (citations omitted). Moreover, "the complaint is to be liberally construed in favor of plaintiff." Id.; see also Bd. of Trustees v. Sullivant Ave. Properties, LLC, 508 F.Supp.2d 473, 475 (E.D.Va.2007). Id.

The Fourth Circuit similarly states the standard in E.I. Du Pont Demours and Company v.

4

Kolon Indistries, Inc., 637 F.3d 435 (4th Cir. 2011):

> When ruling on a Rule 12(b)(6) motion to dismiss, "a judge must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007). To survive the motion, a complaint (or counterclaim, as is the case here) must contain sufficient facts to state a claim that is "plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Nevertheless, a complaint "need only give the defendant fair notice of what the claim is and the grounds upon which it rests." Coleman v. Md. Ct. of Apps., 626 F.3d 187, 190 (4th Cir.2010) (internal quotation marks omitted). Further, "like the district court, [we] draw all reasonable inferences in favor of the plaintiff." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir.2009).

\* \* \*

> In deciding whether a complaint will survive a motion to dismiss, a court evaluates the complaint in its entirety, as well as documents attached or incorporated into the complaint. Sec'y of State for Defence v. Trimble Navigation Ltd., 484 F.3d 700, 705 (4th Cir.2007); Phillips v. LCI Int'l Inc., 190 F.3d 609, 618 (4th Cir.1999) (stating that "a court may consider [a document outside the complaint] in determining whether to dismiss the complaint" where the document "was integral to and explicitly relied on in the complaint" and there was no authenticity challenge). However, the district court cannot go beyond these documents on a Rule 12(b)(6) motion; if it does, it converts the motion into one for summary judgment. Fed.R.Civ.P. 12(b), 12(d), 56.

\* \* \*

> Additionally, statements by counsel that raise new facts constitute matters beyond the pleadings and cannot be considered on a Rule 12(b)(6) motion. Dolgaleva v. Va. Beach City Pub. Sch., 364 Fed.Appx. 820, 825 (4th Cir.2010) (citing Hamm v. Rhone–Poulenc Rorer Pharms., Inc., 187 F.3d 941, 948 (8th Cir.1999)); cf. Smith v. Local No. 25, Sheet Metal Workers Int'l Ass'n, 500 F.2d 741, 744–45 (5th Cir.1974) (treating a Rule 12(b)(6) dismissal order as converted into summary judgment because district court relied on materials outside the pleadings, including oral argument). In Dolgaleva, rather than considering only the face of the complaint, the district court allowed the defendant to dispute allegations during a hearing. The district court then improperly dismissed the complaint based on statements the defendant made at the hearing. Dolgaleva, 364 Fed.Appx. at 825–26. (citing Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir.2001) (finding error where the district court "assumed the existence of facts that favor defendants based on evidence outside plaintiffs' pleadings, [and] took judicial notice of the truth of disputed factual matters")).

5

## III. ARGUMENT

HBL is liable to the Plaintiffs under the MMWA because HBL sold the vehicle to the Plaintiffs not "AS IS" but under one or all of the following: a warranty of merchantability, a warranty of fitness for personal and household use, a limited dealership warranty, an implied warranty, an express warranty, and an extended warranty or service contract. HBL was negligent in its inspection of the vehicle, was negligent in preparing the vehicle for sale, was negligent in the management techniques adopted to ensure sales complied with the FTC's used car rule, was negligent in placing the vehicle on its lot for sale despite the vehicle having manufacturing defects that were known or should have been known to HBL, was negligent in presenting a CARFAX report to the Plaintiffs which did not capture or relay the true nature of the vehicle's repair history, and was negligent in failing to enact management techniques to ensure vehicles were not over three (3) quarts low on oil before leaving the dealership. HBL stands in violation of the Virginia Consumer Protection Act because HBL knowingly violating federal and state law, HBL knowingly misrepresenting the true nature of the vehicle, HBL knowingly misrepresenting financing it provided as the "best" available to Plaintiffs, HBL knowingly stated that the vehicle was not being sold "AS IS" but now states the vehicle was sold "AS IS" which is both "deceptive" and "unfair" under the used car rule. HBL's refusal to accept Plaintiff's rescission of the sale and revocation of acceptance of the vehicle under the Uniform Commercial Code are factually stated and demonstrated upon the exhibits attached to Plaintiffs' Complaint. HBL is fully aware of the bases in fact and law supporting Plaintiffs claims and now attempts to avoid the warranties and other theories of liability through unapproved means and that attempt is unavailing.

### A. HBL WAS PROVIDED FAIR NOTICE OF ALL OF THE PLAINTIFFS' CLAIMS AND THE GROUNDS UPON WHICH PLAINTIFFS' CLAIMS REST.

#### 1. HBL FAILED TO DISCLAIM STATE LAW IMPLIED WARRANTIES.

The Buyer's Order, which the Plaintiffs signed for the purchase of the vehicle, is attached to their Complaint as Exhibit A.[3] The Buyer's Order contained the following complete warranty disclaimer:

> FOR 'AS IS' SALE ONLY: I UNDERSTAND THAT THIS VEHICLE IS BEING SOLD 'AS IS' WITH ALL FAULTS AND IS NOT COVERED BY ANY DEALER WARRANTY. I UNDERSTAND THAT THE DEALER IS NOT REQUIRED TO MAKE ANY REPAIRS AFTER I BUY THIS VEHICLE. I WILL HAVE TO PAY FOR ANY REPAIRS THIS VEHICLE WILL NEED." (capitals in original, original was not in bold type).

Mrs. Henry did not sign or date this disclosure which appeared on the Buyer's Order.

The disclaimer on the Buyer's Order is in accordance with Va. Code § 8.2-316(a) ("Exclusion or Modification of Warranties") which allows for exclusion or modification of warranties. However, Va. Code § 8.2-102 (Scope; certain security and other transactions excluded from this title) states that Title 8.2 of the Virginia Code (the Uniform Commercial Code as adopted by Virginia) does not "**impair or repeal any statute regulating sales to consumers,** farmers or other specified classes of buyers." Va. Code § 8.2-102 (Emphasis added). Therefore, as a statute regulating sales of goods to consumers in Virginia, 46.2-1529.1 is given full effect and the disclaimer provision on the Buyer's Order in this case is void as it is in conflict with Va. Code § 46.2-1529.1 (Sales of Used Motor Vehicles by Dealers) which provides that in the Commonwealth of Virginia:

---

[3] For purposes of convenience, the Buyer's Order that was attached to the Complaint as **Exhibit A** (the Buyer's Order) is attached hereto (redacted to comply with pertinent redaction rules).

7

> **A dealer may sell a used motor vehicle at retail "AS IS" and exclude all warranties only if** the dealer provides the buyer, prior to sale, a separate written disclosure as to the effect of an "AS IS" sale. The written disclosure **shall be** conspicuous **and contained on the front of the buyer's order** and printed **in not less than bold**, ten-point type **and signed by the buyer**: "I understand that this vehicle is being sold 'AS IS' with all faults and is not covered by any dealer warranty. I understand that the dealer is not required to make any repairs after I buy this vehicle. I will have to pay for any repairs this vehicle will need." **A fully completed Buyer's Guide, as required by federal law, shall be signed and dated by the buyer and incorporated as part of the buyer's order**.

Va. Code § 46.2-1529.1 (Emphasis added). Once the disclaimer and disclosure provision in the Buyer's Order failed to be executed by the parties to this transaction, the Uniform Commercial Code, as adopted by the Commonwealth of Virginia, interjects an implied warranty of merchantability into the contract for the sale of the vehicle to Mrs. Leetosha Henry. *See:* Virginia Code § 8.2-313. Va. Code § 8.2-314 states in relevant part that:

> (1) Unless excluded or modified (§ 8.2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.
>
> (2) Goods to be merchantable must be at least such as
>
>> (a). * * *
>> (b). * * *
>> (c) are fit for the ordinary purposes for which such goods are used; * * *"

Virginia Code § 8.2-314 provides an implied warranty of merchantability for all goods. In the sole Virginia case counsel for Plaintiffs could locate that addressed whether a motor vehicle is a good, the Fairfax County Circuit Court concluded that "motor vehicles fall within the UCC's definition of a good—even if the vehicle is acquired for personal use." Credit Acceptance Corp. v. Coates, 75 Va. Cir. 267, (2008).

The Supreme Court of Virginia set forth the standard of merchantability under Virginia

8

Code § 8.2-314(a), (c) in <u>Bayliner Marine Corp v. Crow</u>, where it held that to be merchantable the goods must be such as "would pass without objection in the trade" and as "fit for the ordinary purposes for which such goods are used." <u>Bayliner Marine Corp. v. Crow,</u> 509 S.E.2d 499, 503 (Va. 1999). As to the failure of the vehicle, the parties do not contest the fact that for a purchase price of just under $20,000 the vehicle purchased by the Henrys and sold by HBL should travel more than 800 miles. As such, the vehicle sold by HBL was not "reasonably capable of performing [its] ordinary functions." *Id at 503.*

In their well-pleaded complaint, the Plaintiffs state as fact that "[they] would not have purchased the vehicle if they had known the true facts pertaining to the prior repairs, **the lack of warranty**, and that the interest rate they were offered was not the lowest rate that was available or that Defendant could find." *See*: Complaint at ¶ 36. (Emphasis added). Further still, Plaintiffs stated as a matter of fact that "Defendant knew the Plaintiffs would rely on the assumed fact that the vehicle was not sold 'AS IS.'" *See:* Complaint at ¶ 37. In addition to the foregoing, the Plaintiffs further pled as fact that "[t]he Defendant is therefore prohibited from disclaiming the implied warranty of merchantability that arose in the contract of sale under Virginia law." *See*: Complaint at ¶ 54.

The vehicle was certainly not fit for the ordinary purposes for which it was intended. Accordingly, HBL is liable to the Henrys for breach of the implied warranty of merchantability and for beach of contract.

### 2. THE BUYER'S GUIDE IS FACIALLY INVALID, AND, THEREFORE, VIOLATES THE FEDERAL TRADE COMMISSION'S USED MOTOR VEHICLE TRADE REGULATION RULE: 16 C.F.R. PARTS 455.1-455.7.

The Buyer's Guide was not incorporated into the contract of sale of the vehicle. Therefore, as a preliminary matter, HBL's introduction of the Buyer's Guide would convert this

9

matter from a 12(b)(6) Motion to Dismiss into a summary judgment motion. Summarizing the failures of HBL as to the Buyer's Guide, the Plaintiffs respectfully direct the Court's attention to the following:

As to the legislative intent behind 16 C.F.R. Parts 455.1-455.7, the Federal Trade Commission (FTC) adopted the Used Motor Vehicle Trade Regulation Rule (hereinafter the "used car rule") "in order to prevent the unfair and deceptive acts or practices" and announced that it "is a violation of this Rule for any used car dealer to fail to comply with the requirements set forth in §§ 455.1-455.5 of this part." Title 16 C.F.R. Part 455.1. A review of the Buyer's Guide demonstrates HBL did not comply with numerous requirements of the "used car rule."

First, the Buyer's Guide attached to the Defendant HBL's 12(b)(6) Motion to Dismiss was not "displayed prominently and conspicuously in any location on a vehicle and in such a fashion that both sides are readily readable." 16 C.F.R. Part 455.2. As would be shown by evidence in this matter, HBL also did not "remove the form temporarily from the vehicle during any test drive" nor did HBL "return it as soon as the test drive was over." 16 C.F.R. Part 455.2.

Second, the Buyer's Guide was not provided to Plaintiffs at the time of the sale. HBL failed to comply with 16 C.F.R. Part 455.3 which states that a dealer must "give[s] the buyer of a used vehicle sold by [the dealer] the window form displayed under § 455.2 containing all of the disclosures required by the Rule and reflecting the warranty coverage agreed upon." 16 C.F.R. Part 455.3. HBL has the original Buyer's Guide in its possession. HBL did not provide the Henry's with a copy of the Buyer's Guide.

Third, HBL violated 16 C.F.R. 455.2, as Defendant demonstrates by introducing the Buyer's Guide. The box indicating the availability of a service contract was not marked by HBL. 16 C.F.R. 455.2 required HBL to check the box because:

> "If you make a service contract (other than a contract that is regulated in your State as the business of insurance) available on the vehicle, you **must** add the following heading and paragraph below the "Full/Limited Warranty" disclosure and mark the box provided."

16 C.F.R. 455.2. (Emphasis added). The Buyer's Guide introduced by HBL contains the exact language required by the used car rule, See: Buyer's Guide attached to Defendant HBL's 12(b)(6) Motion to Dismiss:

> ☐ Service Contract
>
> A service contract is available at an extra charge on this vehicle. If you buy a service contract within 90 days of the time of sale, State law "implied warranties" may give you additional rights.

As is clear, HBL did not mark the "SERVICE CONTRACT" despite offering and selling a service contract to the Henrys as required by the used car rule.

Fourth, Virginia law limits "AS IS" sales of vehicles as discussed at Section II.A.1., *Supra*. Because Virginia limits "AS IS" sales of vehicles, the "state law overrides this part and the rule does not give you the right to sell 'AS IS.' In such States, the heading 'As Is'- NO WARRANTY' and the paragraph immediately accompanying that phrase must be deleted from the form" and a different paragraph must be substituted. *See:* 16 C.F.R. Part 455.2.

Fifth, and most important to Plaintiffs' contention that the Buyer's Guide was not provided to them and is not relevant to any proceeding here, the FTC's Used Motor Vehicle Trade Regulation Rule provides that

> (f) if a dealer includes an optional signature line on the Buyer's Guide, the dealer "**must include a disclosure in immediate proximity to the signature line stating:** *'I hereby acknowledge receipt of the Buyer's Guide at the closing of this sale.'*"

16 C.F.R. 455.2 (f). (Emphasis added). Repeating, no such disclosure appears **anywhere** on the face of the Buyer's Guide. The FTC requirements were enacted to protect consumers from

11

unscrupulous car dealers and to prevent fraud similar to the fraud that HBL attempts to perpetrate upon the Henrys. By introducing the Buyer's Guide, HBL accomplishes little more than turning this into a motion for summary judgment and demonstrating the numerous ways in which it violated the FTC's used car rule.

### 3. HBL VIOLATED MAGNUSON MOSS

#### i. HBL'S BREACH OF STATE LAW WARRANTIES TRIGGERS MAGNUSON-MOSS LIABILITY.

The next question is whether HBL is liable for the breach of the implied warranty under Magnuson-Moss. Magnuson-Moss allows a suit for breach of "an implied warranty arising under State law (as modified by sections 2308 and 2304(a) of this title)." *See:* 15 U.S.C. § 2301(7). Magnuson-Moss does not define the term "implied warranty" and instead allows "state law" to govern what constitutes an "implied warranty" under Magnuson-Moss. *See,* 16 C.F.R. Section 701.1(d). Plaintiffs demonstrate through their Complaint facts that plausibly give rise to HBL's liability for violating Magnuson-Moss as is fully demonstrated and analyzed at Section III.A.1, *Supra.*

#### ii. THE IMPLIED WARRANTY OF MERCHANTABILITY CANNOT BE DISCLAIMED OR LIMITED UNDER 15 U.S.C. § 2308(a).

In addition to the argument made at Section III.A.2. and Section III.A.3.i, above, the regulations implemented under the authority of Magnuson-Moss provide: "A supplier who does no more than distribute or sell a consumer product covered by a written warranty offered by another person or business *and which identifies that person or business as the warrantor* is not liable for failure of the written warranty to comply with the Act or rules thereunder. *See,* 16 C.F.R Section 700.4 (Emphasis added). The language of the regulation excludes a dealer only if the dealer identifies the other person or business as the warrantor to the consumer. HBL did not

do so in this case.

HBL sold the vehicle to the Plaintiffs without indicating that a separate service contract was available on the "Buyer's Guide," and subsequently stood in the shoes of the purported "warranty company" when dealing with the Plaintiffs, going as far as to advise the Plaintiffs that the claim was not covered under the service contract supplied to the Plaintiffs by HBL. By virtue of the Magnuson-Moss Warranty Act, an "as is" provision does not exclude implied warranties when the seller concurrently enters into a service contract with the buyer. Auburn Ford Lincoln Mercury Inc. v. Norred, 541 So.2d 1077, 1080 (Ala.1989).

HBL also sold the vehicle to the Plaintiffs with a written service contract or extended warranty, but did not properly disclose to the Plaintiffs that only United Auto Care, not HBL was obligated under the warranty for the vehicle. HBL relies upon disclosures on the Buyer's Order. However, the face of the Buyer's Order clearly evinces that the parties' reached an agreement that the vehicle was not being sold "AS IS" because the requisite disclaimer was not executed by the Henrys. Further, HBL failed to expressly and unequivocally disclose to the Plaintiffs that they were not the warrantor to the consumer because the dealership limited warranty and the vehicle service contract both failed to identify any other party as the warrantor. Indeed, discovery in this matter will show that HBL directed the warranty company to decline coverage despite the warranty company having indicated to HBL that the loss could be covered. For purposes of this demurrer, this factual allegation must be taken as true. Because HBL did not disclaim the vehicle being sold "as is" on the front of its buyers order and because the disclaimers do not apply in this instance, the facts demonstrate that HBL did not identify to the Plaintiffs that United Auto Care was the "warrantor" in express unequivocal plain language. Moreover, following the claim, HBL required all communications from the Henrys be delivered

13

to the warranty company by HBL. HBL may not avoid liability and is estopped from asserting it was merely the "supplier" and not the "warrantor."

### 4. THE COMPLAINT ALLEGES HBL'S NEGLIGENCE.

In Virginia actions, "[a]n allegation of negligence or contributory negligence is sufficient without specifying the particulars of negligence." Rule 3:18(b). Plaintiffs may generally allege negligence, without specifying all the facts giving rise to its negligence claim. Tanner v. Mobil Oil Corp., 54 Va. Cir. 90, 2000 Va. Cir. LEXIS 550 (Fairfax County 2000).

In federal court, a complaint must provide a requisite degree of specificity under a "notice pleading" standard. Fed.R.Civ.P.8. Thus, the stated claims for negligence cannot be dismissed at the stage of a motion to dismiss because the Plaintiffs attached to their Complaint service records that indicate the vehicle was over three quarts low on oil with only one and one half (1.5) quarts of oil remaining in its engine. Inference may be drawn from this fact and the fact that the vehicle did not show any signs of an oil leak. The lack of oil caused the vehicle to fail 800 miles after it was sold.

HBL had a duty to deliver the car to the Henrys with oil in its engine. HBL had a duty to enact management techniques to ensure it complied with Virginia and federal laws pertaining to the sale and financing of the vehicle, including ensuring it complied with 16 C.F.R. 455.1, *et. seq.* and Virginia Code Section 46.2-1529.1. Additionally, HBL had a duty to provide an accurate service history through means readily available to it. Plaintiffs outlined in the Complaint numerous ways in which HBL violated duties owed to the Plaintiffs. Therefore, the Plaintiffs have plead their negligence claim with the requisite degree of specificity as required under Fed.R.Civ.P. Rule 8.

### 5. HBL COMMITTED ACTUAL AND CONSTRUCTIVE FRAUD ALL IN VIOLATION OF THE VIRGINIA CONSUMER PROTECTION ACT.

The Virginia Consumer Protection Act (VCPA) was enacted with "the intent of the General Assembly that [it] shall be applied as remedial legislation to promote fair and ethical standards of dealings between suppliers and the consuming public." Va. Code § 59.1–197. Pursuant to Va. Code § 59.1–200(A)(6), the VCPA makes it unlawful for "a supplier in connection with a consumer transaction" to "[m]isrepresent that goods or services are of a particular standard, quality, grade, style, or model." In pertinent part, Va. Code § 59.1–198 defines a "[c]onsumer transaction" as "[t]he advertisement, sale, lease, license or offering for sale, lease or license, of goods or services to be used primarily for personal, family or household purposes." "Goods" are defined as "all real, personal or mixed property, tangible or intangible." *Id.* Lastly, a "[s]upplier" is defined as "a seller, lessor or licensor who advertises, solicits or engages in consumer transactions." *Id.*

Based on the plain language of the VCPA, it is unlawful to misrepresent that goods are of "a particular standard, quality, grade, style, or model." Code § 59.1–200(A)(6). This duty not to misrepresent the quality, grade, or style of goods is a statutory duty that exists independent of the Contracts entered into between the parties to this litigation, viz., the duty is "not one existing between the parties solely by virtue of the contract." Dunn Construction, 278 Va. at 267, 682 S.E.2d at 946. Because the Plaintiffs have alleged that Defendants breached a duty existing independent of the Contracts, the VCPA claims must survive the Defendant's 12(b)(6) Motion to Dismiss. Defendant HBL, by its own admission, and in an attempt to inappropriately introduce a document that is outside of the pleadings, was not truthful in dealing with the Plaintiffs as to the true history of the vehicle. Defendant HBL did not sell the vehicle "AS IS" and its attempt to

15

now introduce a Buyer's Guide that violates federal law demonstrates further that HBL is engaged in "a deceptive act or practice" and in an "unfair act or practice" as defined at Title 16 C.F.R. Part 455.1. Defendant HBL misrepresented the nature of the vehicle by providing a faulty CARFAX report, despite knowing the true nature of the vehicle's repair history. HBL unpersuasively attempts to hide behind a Buyer's Guide that was delivered to the Henry's in a "bait and switch" fashion. This also clearly evidences fraud.

HBL, LLC's sole member is Penske Automotive Group, Incorporated, a publicly traded stock corporation. See HBL's Rule 7.1 Statement of Corporate and Financial Interest. Penske Automotive Group owns and operates no fewer than three hundred eighty eight (388) automotive dealerships that are situated throughout the United States and abroad that exist solely for the purpose of servicing and selling consumer goods to the public. Of these dealerships, Penske owns and operates no fewer than fourteen (14) BMW dealerships in the United States of America that sell an inventory of both new and used BMW's to consumers for personal and household use. Because of its unique status as a corporately automotive dealership with 14 BMW dealerships in its portfolio of dealerships, HBL knew or should have known the exact service history of the 2008 Mini Cooper S vehicle *before* it was sold to the Plaintiffs.

Indeed, the existence and scope of a seller's duty to inspect its products depends on the product involved and the condition in which it was sold. <u>Patton v. McHone</u>, 822 S.W.2d 608, 614 (Tenn.App.1991). Courts considering the issue of the duty of used car dealers to inspect their cars prior to sale have recognized that used cars are more likely to have mechanical defects than new ones and that used car dealers are in a better position to discover these defects than their consumers. <u>Ikerd v. Lapworth</u>, 425 F.2d 197, 201-202 (7th Cir. 1970). Used car dealers have a duty to make reasonable inspection of the vehicle to discover defects or conditions that

could render the car defective or dangerous. L. Frumer & M. Friedman, Products Liability, § 6.03 (1991). A seller must disclose information concerning the condition of a product only when it has a duty to do so. Restatement of Torts § 551(1).

HBL was either cognizant of or had within its possession records to demonstrate that the CARFAX report that was provided by Audi of Tyson's Corner misrepresented the vehicle's repair history. As HBL concedes, the CARFAX report failed to capture the true nature of the vehicle's service history based upon records in the possession of a sister BMW dealership. See, **Exhibit E** to Complaint (January 3, 2014, Letter to Penske General Counsel) of the Complaint. The actual service records on the vehicle demonstrate that the vehicle suffered from excessive oil consumption and underwent attempts to repair the vehicle's engine all contrary to the CARFAX report. The vehicle thereafter experienced a catastrophic failure consistent with the type of repair attempts the vehicle underwent while owned by a previous owner for both oil consumption and engine repair. Plaintiffs' reliance on the representations of HBL caused Plaintiffs to suffer economic harm, loss of use, and other damages. Their damages are all recoverable under theories of actual and constructive fraud and the Virginia Consumer Protection Act.

HBL elected to mislead the true nature of the vehicle in order to sell to Plaintiffs a vehicle with a serious defect. By showing the Plaintiffs a CARFAX report that HBL knew or should have known inaccurately and incompletely outlined the true service history on the vehicle, the Henrys relied on the same and proceeded to purchase the vehicle from HBL. HBL knew that consumers such as the Henrys would rely upon an inaccurate CARFAX report to their detriment. Further still, HBL knew that the true history of the vehicle's oil consumption could be ascertained through a review of repair attempts.

Defendant HBL also misrepresented the details surrounding the financing secured by it

17

from Wells Fargo Dealer Services as stated in Plaintiffs' Complaint. As Defendant has now shown, when dealing with the Henrys, HBL violated the used car rule and its attempt to now label the sale of the vehicle "AS IS" is "deceptive" and "unfair" under 16 C.F.R. Part 455.1.

### 6. SUFFICIENT FACTS SUPPORT A CLAIM THAT PLAINTIFFS REVOKED ACCEPTANCE OF THE VEHICLE AND THAT HBL BREACHED THE TERMS OF THE CONTRACT BY SELLING A VEHICLE TO THE HENRYS THAT WAS NOT MERCHANTABLE.

Revocation of acceptance must be made promptly, or within a reasonable time after acceptance, and the buyer may not use the goods to a material degree and then attempt to revoke. Reece v. Yeager Ford Sales, Inc., 155 W.Va. 453, 184 S.E.2d 722 (1971). What constitutes a reasonable time depends upon the facts and circumstances of each case. The time for revocation will ordinarily extend beyond the time for giving notice of breach. Lanners v. Whitney, 247 Or. 223, 428 P.2d 398 (1967); Pedrini v. Mid-City Trailer Depot, Inc., 1 Wash.App. 56, 459 P.2d 76 (1969). Where the delay in notification of revocation is brought about because the buyer gave the seller repeated opportunities to correct the defects and the seller procrastinated in accomplishing repairs, the delay is not unreasonable. Seekings v. Jimmy GMC of Tucson, Inc., 130 Ariz. 596, 638 P.2d 210 (1981). But after giving notice of revocation, the buyer holds the goods as bailee for the seller. The buyer cannot continue to use them as his own and still have the benefit of rescission; his continued use becomes wrongful against the seller, unless induced by the seller's instructions or promises. Stephens Industries, Inc. v. American Express Co., 471 S.W.2d 501 (Mo.Ct.App.1971); Sellman Auto, Inc. v. McCowan, 89 Nev. 353, 513 P.2d 1228 (1973).

Exceptions have been made to the rule in mobile home cases, where departure from the home before resolving the litigation would cause undue hardship to the buyer and where the buyer's continued occupancy might be the best means of safeguarding the property for a seller

who refuses to take it back. Minsel v. El Rancho Mobile Home Center, Inc., 32 Mich.App. 10, 188 N.W.2d 9 (1971). *Cf.* Twin Lakes Mfg. Co. v. Coffey, 222 Va. 467, 281 S.E.2d 864 (1981). Plaintiffs well-pleaded complaint and its Exhibits which clearly evidences revocation of acceptance, put Defendants' on notice of the facts and circumstances giving rise to claims HBL violated Virginia Code § 8.2-608 by failing to honor Plaintiff's revocation of acceptance as shown upon the attached Exhibits E and F to Plaintiffs' well-pleaded Complaint.

### IV. CONCLUSION

WHEREFORE, HBL is aware of the true nature of each of the Plaintiffs' claims and fails to demonstrate that it should be excluded from liability under Counts 1-8 of the Complaint that sufficiently allege violations of both Virginia law and federal law. Accordingly, Plaintiffs Leetosha Henry and Zachary Henry respectfully request that this Honorable Court overrule HBL's 12(b)(6) Motion to Dismiss and allow this case to proceed. Plaintiffs also request that the Court award Plaintiff's their fees and costs incurred in opposing HBL's 12(b)(6) Motion to Dismiss. Should the Court sustain Defendants' Motion to Dismiss on any Count or find the Complaint requires further clarification or detail, the Plaintiffs make a general motion for leave to amend their Complaint.

Respectfully submitted,

**LEETOSHA HENRY AND ZACHARY HENRY**

By: _____
Geoffrey S. Burke

Geoffrey S. Burke, VSB # 75728
Burke Law, P.L.C.
602 Cameron Street
Alexandria, Virginia 22314
(703) 665-4454, Telephone
(703) 649-6224, Facsimile
gburke@burkelawpractice.com
*Counsel for Leetosha and Zachary Henry*

## CERTIFICATE OF SERVICE

I hereby certify that on this the 16th day of June 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which then sends a notification of electronic filing (NEF) to the following:

>Robert E. Worst, VSB # 44664
>Matthew D. Baker, VSB # 83619
>Counsel for HBL, LLC
>d/b/a Audi of Tyson's Corner
>Kalbaugh, Pfund & Messersmith, P.C.
>3950 University Drive, Suite 204
>Fairfax, Virginia 22030
>(703) 691-3331 (Tel)
>(703) 691-3332 (Fax)
>Robert.Worst@kpmlaw.com

_____
Counsel